Appendix 4

Complaint Format

In the United States District Court

Southern District of Alabama

_____ Divlsion


(Name of Plaintiff) Ryan Pierre Turner          Jury Demand
  Plaintiff

VS.                                    Civil Action No. 15-CV-6066-KD-B


(Name of Defendants) United States Marine Corps
  Defendant

_____

Complaint

1.

(Grounds for jurisdiction) Mobile County

2.

(show plaintiffs names and residence or adress)
                          5799 southland Dr.
                          Apt. 4206
                          Mobile, Ala 36693

3.

Show defendants names and address
    Headquarters United States Marine Corps, Code IG
    Washington, D.C. 20-3.7. 20380. 1775

Appendix A (cont'd)
Complaint Format

4.

R.T.
De Discrimination in my former command

5.

(Give a brief, concise statement of the specific facts involved in your case) please refer to attached documents. diagnosed ~~military~~ by with Depression by the V.A.

6.

(State the relief you are requesting.)
Option to be 100% reinstated with correct rank/time and grade
Option to be 100% retired
5 million dollars for the negative impact
this has had on my life

R___ ___ 12-30-2015 Pro se
(Signature and date), Pro se
5799 Southland Dr, Apt 4206
Mobile, Ala 36693
(Address)

251 509 4674
(Phone Number)

Appendix B

Certificate of Service Format.

## Certificate of Service

I hereby certify that a copy of the foregoing Complaint
                                                    (Name of Pleading)

was mailed/delivered to Headquarters United States Marine Corps at    Headquarters United States
                        (Name of defendant/s) (Address)                Marine Corps
                        or defendant's attorney)                       Code IG
                                                                       Washington D.C. 20380-1775

On 12-30-2015 _____ 20 15 _____.

                                        Reg A  12-30-2015 pro se
                                        (signature and date), prose
                                        5799 Southland Dr. Apt 4206
                                        Mobile, Ala 36693
                                        (Address)


                                        251 509 4674
                                        (Phone Number)

From: ████████████████████████

To:    Whom it may concern

Subject: DETAILS IN THE CONDUCT OF THE STAFF NON-COMMISSIONED OFFICERS WITHIN MWSS 471 DURING THE MONTH OF MARCH 2010

1.  After I walked into the MWSS 471 building, I proceeded to speak with ████████████████ As I proceeded to his office, and eventually came upon his door, I was stopped by the racial slurs that were coming out of his office.  Along with ██████████ were two other ████ and one other ████████████ that were in his office condoning the conversation that was taking place.  Words such as Nigger, Blacks, and Black folk were some of the harsh statements that were being said.

2.  As I stood there in disbelief, I briefly said to myself that this could not be happening.  That feeling was quickly overturned when I heard all of them laughing about what was being said regarding African Americans in the military.  I am also led to believe that they were speaking of Sgt Turner; because he was the only African American Marine in MWSS 471 at the time.

3.  As I stepped in front of the door, "ALL JAWS DROPPED," and the conversation quickly changed to "Hey ████████████ what's going on; how can I help you?  My reply was......  "YOU CAN'T!"  After that, I simply walked out of the building and proceeded to my office.  Once there, I fell into tears.  Out ██████ 14 years in the Marine Corps, this was the first time I experienced this type of hatred towards a certain race.

4.  After about an hour, I brought this situation to to my current OIC, and ████ then told me to immediately go to the Group Commanding Officer.  When speaking to him, I told him everything that happened without giving names (which he wanted to know badly).  More so, I felt that word would get back to those who used those racial slurs and that I too might become a target.

5.  The Commanding Officer immediately called an all hands meeting in the auditorium, and stressed that if he was to catch those who were in violation of conduct of unbecoming, he will do his best to process them out of the Marine Corps.  As I was sitting in the back of the auditorium, those that had said those racial slurs were also there, and they knew that the CO was speaking to them (indirectly).  As I watched them slouch down in their chairs from the embarrassment, I could only think about the Marines in the future they could contaminate (as their so called leaders).

6.  I strongly felt sorry for Sgt Turner knowing that he too was a victim of the same situation.  I felt that his situation was more stressful than mine for the simple fact that he had to work with them every day until he PCS'd.  There is not a day that does by that I do not regret that I to did not take a stronger stance in the face of this ignorance.  I strongly endorse Sgt Turner's fight for his and his family's career!.

7.  I there are any questions or concerns regarding my statement, please contact me by email at ████████████████

ENCLOSURE (17)



UNITED STATES MARINE CORPS
MARINE AIRCRAFT GROUP 14
2D MARINE AIRCRAFT WING
POSTAL SERVICE CENTER BOX 8051
CHERRY POINT, NC 28533-0051

5800
Legal

From:  ████████████████████████████ /7543 USMC
To:    Commanding Officer, Marine Aircraft Group 14

Subj:  SUMMARY OF INTERVIEW CONDUCTED WITH ████████████
       ██████████████ CONCERNING THE COMMAND INVESTIGATION INTO
       THE CIRCUMSTANCES SURROUNDING THE EQUAL OPPORTUNITY
       COMPLAINT OF 13 MARCH 2014

SUMMARY OF INTERVIEWS

1. ████████████████████████was formally interviewed on 18
March 2014.  This interview was conducted to ensure all
potentially relevant information was gathered. ████████████████
████████████answered all questions fully during the course of the
interviews.

2. ████████████████████████ was assigned to Marine Wing
Support Group (MWSG) 47 from (b)████until(b)████and served as the

3. ████████████████████████provided a written statement about
a racial incident at Marine Wing Support Squadron (MWSS) 471
Detachment B.  That statement has been included in this
investigation separately.

4. ████████████████████████ stated that the incident in
question happened in march 2010.  He overheard ████████████████
████████████making racially motivated comments.  The gist of
these comments were about getting Sergeant Turner out of the
Marine Corps and African American Marines in general.  The
statements made talked about "how it is a shame that blacks are
able to get to positions of authority in the Marine Corps where
whites have to answer to them."  ████████████████████████
stated that ████████████████████████further referred to African
Americans as "Niggers" during these comments.  He also stated
that ████████████████████████████████████ MWSS 471
Detachment B, was in the room when ████████████████████████. made
the comments.

54                                              ENCLOSURE (7)



UNITED STATES MARINE CORPS
MARINE AIRCRAFT GROUP 14
2D MARINE AIRCRAFT WING
POSTAL SERVICE CENTER BOX 8051
CHERRY POINT, NC 28533-0051

5000
ADJ
2 3 JUN 2014

From: Commanding Officer, Marine Aircraft Group 14
To:   Commanding General, 2d Marine Aircraft Wing

Subj: DISPOSITION OF ALLEGED EQUAL OPPORTUNITY COMPLAINT IN THE CASE
OF SERGEANT RYAN P. TURNER 1276001082/3531

Ref:  (a) MCO P5354.1D w/Ch1

Encl: (1) MAG-14 Command Investigation of 04 Apr 2014
      (2) Statement of Satisfaction
      (3) Legal Sufficiency Review
      (4) EO Opportunity Review
      (5) Extension Request and Approval

1.  This reports action taken in response to a formal Equal
Opportunity complaint made by Sergeant Turner to the Commanding
Officer, Marine Aircraft Group 14.

2.  On 3 March 2014, a formal command investigation was convened and
the final investigation report was submitted on 4 April 2014.  I have
reviewed the Command Investigation in its entirety and concur with the
findings and recommendations of the Investigating Officer.
Additionally, I substantiate Sergeant Turner's equal opportunity case
as documented in the Command Investigation.

3.  It is likely that Sgt Turner's ability to remain on active duty
has been compromised by racially influenced behavior at his former
command, MWSS-471.  As a result of a questionable reduction to
Corporal at a Competency Review Board, a botched appeal process, and
the absence of opportunity afforded him as a "problem" NCO, this
Marine is now against his service limitations.  Sgt Turner's attempts
to right his record via the Board of Naval Corrections is still
pending.

4.  I recommend the following:

    a.  All performance evaluations associated with Sgt Turner's tour
at Marine Wing Support Squadron 471 (MWSS-471) be removed from his
record.

    b.  Overturn Sergeant Turner's reduction and reinstate his
original date of rank.

    c.  Convene a remedial promotion board to consider Sgt Turner's
potential for promotion to Staff Sergeant.  My staff's research
indicates he would have been eligible for the FY14 board had he not
been reduced.

30



UNITED STATES MARINE CORPS
2D MARINE AIRCRAFT WING
II MARINE EXPEDITIONARY FORCE
POSTAL SERVICE CENTER BOX 8050
CHERRY POINT, NC 28533-0050

IN REPLY REFER TO:
5354
EOA
11 Apr 14

From:  Equal Opportunity Advisor, 2d Marine Aircraft Wing
To:    Commanding Officer, Marine Aircraft Group 14

Subj:  EQUAL OPPORTUNITY REVIEW OF COMMAND INVESTIGATION INTO THE
       CIRCUMSTANCES SURROUNDING THE EQUAL OPPORTUNITY COMPLAINT OF 6
       MARCH 2014

Ref:   (a) MCO P5354.1D W/Ch 1
       (b) CI by ████████████████████████████ of 4 Apr 14

1.  In accordance with reference (a), an equal opportunity (EO) review has
been conducted on the command investigation completed by Lieutenant Colonel
David C. Anderson containing the alleged facts and circumstances surrounding
the subject incident.

2.  The following information is forwarded for your review:

    a.  The investigation did comply with all the timeline requirements per
reference (a).  The commanding officer requested and received a 30 day
extension in order to complete the required sufficiency reviews.

    b.  This investigation provided a look into the formal complaint
submitted by Sergeant (Sgt) Ryan P. Turner.  Sgt Turner is alleging race
discrimination against ███████████████████████████████████████████████

        (1)  Discrimination is the illegal treatment of a person or group
based on age, color, gender, race, religion, or national origin.
Discrimination also includes persons condoning, ignoring, or failing to
correct negative and hostile working environments, where one or more of the
discriminatory factors mentioned above is present, during the performance of
their duties.  All forms of discrimination, such as racism, sexism, and
religious intolerance, can occur not just through the acts of individuals,
but within the systems, policies and procedures of an organization.
Such unacceptable conduct, if uncorrected, will eventually poison a unit's
cohesion and morale.

        (2)  Hostile working environment, a type of harassment that occurs when
unwelcome behavior of one or more persons in a workplace produces a work
atmosphere which is offensive, intimidating, or abusive to another person
using reasonable person standard.

        (3)  Disparaging terms are terms used to degrade or imply negative
connotations pertaining to age, color, national origin, race, ethic group,
religion or gender.  Such terms include insults, printed material, visual
material, signs, symbols, posters, or insignia.

35

Enclosure (4)

Subj:  EQUAL OPPORTUNITY REVIEW OF COMMAND INVESTIGATION INTO THE
       CIRCUMSTANCES SURROUNDING THE EQUAL OPPORTUNITY COMPLAINT OF 6
       MARCH 2014

3.  The investigation did reveal a perception of equal opportunity violations
at MWSS 471 (Det B), MAG-47, 4th MAW; however a lapse of time creates a
challenge as the allegations are from 1 February 2008 to 10 May 2011.  [FF 8,
9, 11, 14, 15, 16] [encl (2), (3), (5), (7), (8), (9), (15), (17)]

4.  The investigation did reveal discrimination allegations against
                                   [FF 14, 15] [encl (8), (9)]

5.  The investigation did reveal a perception there was significant command
climate concerns in regards to racism, sexism, and religious discrimination
and a hostile working environment was created by the leadership.
[FF 8, 9, 11, 14, 15, 16] [encl (2), (3), (5), (7), (8), (9), (15), (17)]

6.  The investigation did not reveal interviews of the following alleged
offenders,                                        and

7.  The investigation did reveal that one of the main alleged offenders was
directly in Sgt Turner's chain of command.                        has since
retired from the Marine Corps. [FF 17] [encl (13)]

9.  The investigation did reveal a perception that unit leadership used
disparaging terms about African Americans; however, no formal EO complaint
was filed.  [FF 8, 9]  [encl (7), (9), (17)]

10.  The investigation did reveal a perception that unit leadership was
present during the use of disparaging terms about African Americans; however,
no formal EO complaint was filed.  [FF 8, 9] [encl (7), (9), (17)]

11.  The following recommendations are made:

    a.  After 2d MAW Commanding General review, I recommend this
investigation along with the findings and recommendations be forward to 4th
MAW Commanding General for review.

    b.

    c.

    d.  I do agree with the investigating officer,                that based
on the findings of this investigation, consideration should be given for
administrative action to remove derogatory material from Sgt Turner's
official military record which occurred during his time at MWSS-471 (Det B),
MAG-47, 4th MAW.

2

36

Enclosure (4)

Subj: EQUAL OPPORTUNITY REVIEW OF COMMAND INVESTIGATION INTO THE
CIRCUMSTANCES SURROUNDING THE EQUAL OPPORTUNITY COMPLAINT OF 6
MARCH 2014

12.  The point of contact for any questions or concerns in regard to this
matter is ███████████████████████ 2d MAW Equal Opportunity Advisor at ███████████
(b)███████7)c

37                                     3

Enclosure (4)

Subj:  COMMAND INVESTIGATION INTO THE CIRCUMSTANCES SURROUNDING
       THE EQUAL OPPORTUNITY COMPLAINT OF 13 MARCH 2014

## FINDINGS OF FACT

1.  Sergeant Turner was assigned to Marine Wing Support Squadron
(MWSS) 471 Detachment B from 2008 to 2011. [Encl (2)]

2.  Sergeant Turner believes he was treated unfairly by the
command at MWSS 471 Detachment B based on race. [Encl (2)]

3.  Sergeant Turner provided several statements by ██████████
███████████████████████████████ and Sergeant Ryan Turner.
Sergeant Turner also provided copies of an extension request
endorsed by ████████████ an application for correction of military
records, and copies of emails from the 2dMAW Inspector General
concerning Sergeant Turner's Competency Review Board
Appeal.[Encls (2),(16-23)]

4.  Sergeant Turner was charged with domestic violence in March
2010 by civilian authorities but those charges were later
dropped. [Encls, (2),(16,(21)]

5.  Sergeant Turner was subject to an Administrative Separation
Board in August 2010 which voted to retain him. [Encls
(2),(16),(20-21)]

6.  Sergeant Turner was counseled for several instances of being
late, a delinquent government travel charge card, and disobeying
an order. [Encl (25)]

7.  Sergeant Turner was the subject of a Competency Review Board
on 24 February 2011 where he was reduced in rank. [Encl (25)]

8.  ██████████████████████ overheard a conversation at MWSS
471 Detachment B where ██████████████████ was heard to make
racially inappropriate ████████████████████████████████
about ████████████████████████████████████████████████████
positions of authority in the Marine Corps where whites have to
answer to them." ████████████████████ stated that ████████
████████ further referred to African Americans as
"Niggers" during these comments.  He also stated that ████████
████████████████████████ MWSS 471 Detachment B, was
in the room when ████████████████████ made the comments.
[Encls (7),(17)]

9.  ████████████████████ reported the inappropriate
conversation he overheard to ████████████████████████████



**UNITED STATES MARINE CORPS**
MARINE AIRCRAFT GROUP 14
2D MARINE AIRCRAFT WING
POSTAL SERVICE CENTER BOX 8051
CHERRY POINT, NC 28533-0051

5800
Legal

From: ████████████████████████████ 7543 USMC

To: Commanding Officer, Marine Aircraft Group 14

Subj: SUMMARY OF INTERVIEW CONDUCTED WITH CORPORAL ████████ ████████ CONCERNING THE COMMAND INVESTIGATION INTO THE CIRCUMSTANCES SURROUNDING THE EQUAL OPPORTUNITY COMPLAINT OF 13 MARCH 2014

## SUMMARY OF INTERVIEWS

1. ████████████████ was formally interviewed on 31 March 2014. This interview was conducted to ensure all potentially relevant information was gathered. ████████████████ answered all questions fully during the course of the interviews.

2. ████████████████ was assigned to Marine Wing Support Squadron (MWSS) 471 Detachment B from ████████ until ████████. ████████████ has since left the Marine Corps.

3. ████████████████ stated that were racial tensions at Marine Wing Support Squadron (MWSS) 471 Detachment B.

4. ████████████████ stated that ████████████████████ would brag about how many people he kicked out of the Marine Corps.

5. ████████████████ stated that he believes Sergeant Turner was treated differently and unfairly.

6. ████████████████ stated that he heard a Marine state that "Niggers don't know how to handle their bitches". ████████ ████████ does not remember who said it but remembers ████████ being present and doing nothing.

7. ████████████████ stated that Sergeant Turner was routinely given the worst duty assignments; far more than he should have in a fair rotation.

49

ENCLOSURE (3)

Subj:  SUMMARY OF INTERVIEW CONDUCTED WITH ▮▮▮▮▮▮▮▮▮
       ▮▮▮▮▮▮▮ CONCERNING THE COMMAND INVESTIGATION INTO THE
       CIRCUMSTANCES SURROUNDING THE EQUAL OPPORTUNITY COMPLAINT
       OF 13 MARCH 2014

8.  ▮▮▮▮▮▮▮▮▮▮ stated that he left the Marine Corps due to
a lack of trust in his chain of command.

ENCLOSURE (3)



UNITED STATES MARINE CORPS
MARINE AIRCRAFT GROUP 14
2D MARINE AIRCRAFT WING
POSTAL SERVICE CENTER BOX 8051
CHERRY POINT, NC 28533-0051

5800
Legal

From: ███████████████████████████████ 7543 USMC
To:   Commanding Officer, Marine Aircraft Group 14

Subj: SUMMARY OF INTERVIEW CONDUCTED WITH ████████████████
      ████████████ CONCERNING THE COMMAND INVESTIGATION INTO THE
      CIRCUMSTANCES SURROUNDING THE EQUAL OPPORTUNITY COMPLAINT
      OF 13 MARCH 2014

## SUMMARY OF INTERVIEWS

1. ██████████████████ was formally interviewed on 14 March, 17
March and 1 April 2014. This interview was conducted to ensure
all potentially relevant information was gathered. ████████████
████████ answered all questions fully during the course of the
interviews.

2. ██████████████████ was assigned to Marine Wing Support Group
(MWSG) 47 as ████████████ and ████████████ from August████████
until August████████.

3. ██████████████████ described the command climate at both at MWSG
47 and Marine Wing Support Squadron (MWSS) 471 Detachment B as
terrible. She described many troubling incidents that took
place during her tour with MWSG 47.

4. ██████████████████ stated that on one occasion an African
American Marine, █████████████████████ to her in tears
because of a conversation he had overheard. ██████████████ who
was assigned as ██████████████████████ had overheard a conversation
at MWSS 471 where ██████████████████████ made racially
inappropriate comments. The gist of those comments were that
"blacks are the source of legal problems in the Marine Corps".

5. ██████████████████ stated that it was her perception that
Sergeant Turner and African American Marines in general were not
treated fairly. She stated that around the time that Sergeant
Turner was having his troubles with the squadron, every NJP she
can remember involved African American Marines. She further,
stated that in her experience, African American Marines were
held to a different standard. Specifically, she stated that
there were situations where African American Marines who were a

57

ENCLOSURE (9)

Subj:    SUMMARY OF INTERVIEW CONDUCTED WITH ▮▮▮▮▮▮▮
▮▮▮▮▮▮▮ CONCERNING THE COMMAND INVESTIGATION INTO THE
CIRCUMSTANCES SURROUNDING THE EQUAL OPPORTUNITY COMPLAINT
OF 13 MARCH 2014

few minutes late were held accountable while white counterparts
could come in severely late with no repercussions. ▮▮▮▮▮▮▮
▮▮▮▮▮▮ specifically remembers that Sergeant Turner was
receiving negative entries into his record for minor tardiness
while other white Marines were not held to the same tolerances.

6.  ▮▮▮▮▮▮▮▮ stated that in her opinion, the command at
MWSS 471 Detachment B was targeting Sergeant Turner.  She stated
that although Sergeant Turner had done some things to get
himself in trouble initially, he later was being targeted by the
command who wanted to get him out of the Marine Corps.

7.  ▮▮▮▮▮▮▮▮ stated that she personally heard ▮▮▮▮▮▮▮
make statements about how "blacks were the source of legal
problems in the Marine Corps".

8.  ▮▮▮▮▮▮▮▮ stated that she also witnessed other EO
violations that took place at MWSG 47 involving ▮▮▮▮▮▮▮
▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮.  First,
on one occasion ▮▮▮▮▮▮ had a Corporal in his office at the
position of attention for about 20 minutes berating him because
the Corporal was ▮▮▮▮▮.  ▮▮▮▮▮▮▮ told the Corporal that he
was going to hell and asked him how many moms he had.  Second,
on a separate occasion, ▮▮▮▮▮▮ brought ▮▮▮▮▮▮▮▮ into the
office after he learned she had ▮▮▮▮▮.  ▮▮▮▮▮ asked▮▮▮
▮▮▮▮▮▮ when she intended to resign because now her first
priority should be to be a good wife by being home tending to
her husband's need to include making dinner and cleaning the
home.  When ▮▮▮▮▮▮▮ informed him that she was a career
Marine, ▮▮▮▮▮ berated her for over 45 minutes and told her
that he questioned her faith and judgment. ▮▮▮▮▮
stated that on her evaluation from ▮▮▮▮▮▮▮ he told her that
she was the best ▮▮▮▮ he had ever seen, but ranked her last.
When ▮▮▮▮▮▮▮▮ asked him why, he stated that she was 5/5
because "the first 4 are pilots (like ▮▮▮▮▮▮ and fly a
multi-million dollar aircraft, and well...you type for a living
(then laughed)."  He said that 4/5 is a female pilot, and the
top 3 are males.  ▮▮▮▮▮▮▮ stated that the female pilot "is
now a ▮▮▮▮ then rolled his eyes.  ▮▮▮▮▮▮ stated that
the male who is 3/5 was the Group ▮▮▮▮ (pilot), ▮▮▮▮▮▮▮
▮▮▮▮▮▮ and ▮▮▮▮▮ was informed a few days before that
fitness report was due to HQMC that he would be that Marine's
reporting senior, so there was never billet expectations or a
relationship.  All ▮▮▮▮▮▮ needed to know was that he was a

ENCLOSURE (9)

Subj:    SUMMARY OF INTERVIEW CONDUCTED WITH ███████████
         ████████ CONCERNING THE COMMAND INVESTIGATION INTO THE
         CIRCUMSTANCES SURROUNDING THE EQUAL OPPORTUNITY COMPLAINT
         OF 13 MARCH 2014

male pilot and that was good enough for the 3/5 spot on ███████
███████ profile.

9. ████████████ experienced incidents where her leadership
was not supported by ██████████ whenever one of her Marines
severely violated the UCMJ (frauding entries in 3270, showing up
to work 2 hours late every day, physical and emotional abuse of
Marines, etc). She stated other minority officers and females
in leadership also experienced no support from ████████████
whenever they had issues. Those white Marines who were in ██████
███████ bible study received his 100% support whenever they had a
leadership issue—even when the issue was petty, ████████ would
request maximum UCMJ punishment to support these white leaders.
████████████ would severely interrupt women and minorities of all
ranks whenever they spoke and made comments that he was
uncomfortable with minorities by saying "you just can't trust
them." ████████████ stated that ████████ in an all-hands
training on the repeal of Don't Ask Don't Tell, berated the
homosexual community. ████████████ stated that he considers "that
[the homosexual] lifestyle is a choice and they need a head
check. I will be happy to give it to them."

10. ████████████ stated that the staff at MWSG-47 as a whole
became frustrated with ████████ because was hardly at work,
would not submit leave, and no one knew where he was on a daily
basis. ████████████ created his own working hours, and when he
would show up to work, he tormented the staff. ████████████
also recalls incidents where 2 African American officers, ██████
███████ and ████████ ████████ also
experienced being treated by ████████ inferior to their peers
on the staff. ████████ was in a near death car accident
on ████████ due to hydroplaning ████████████████████
██████████████████████████████████████████ She asked the
ambulance driver to contact the command. The Commanding Officer
briefed the Marines that I had been in a severe car accident.
Everyone was concerned. ████████████ told the Marines that "she
deserved it. I am surprised it took this long, crazy women
drivers (then laughed)." Meanwhile, ████████████ was on a
████████████ drip for pain and being screened for
paralysis. When ████████ 10 year old Lab had to be put
down unexpectedly, ████████████ took a day of leave. ██████
██████ joked to ████████ Marines "animals are worthless
and the fact anyone would care about them is beyond me. We

59                                              ENCLOSURE (9)

Subj:    SUMMARY OF INTERVIEW CONDUCTED WITH ████████
         ████████ CONCERNING THE COMMAND INVESTIGATION INTO THE
         CIRCUMSTANCES SURROUNDING THE EQUAL OPPORTUNITY COMPLAINT
         OF 13 MARCH 2014

should bring ████████ dead Lab in for the combat life-
saving course and dissect it."

████ ████████████████████
with ████████████████ shared an office
period ████ from January ████ August ████ During this
to ████ ████ was frustrated with ████ and would cry
████ on more than one occasion after ████
would make derogatory comments about women and minorities every
time she would support an ████ for the command.
████████████ and ████ informed ████
████████ who gave ████ a
████ after ████ tormented the staff for
nearly 2 years.

████████████████████

ENCLOSURE (9)



UNITED STATES MARINE CORPS
MARINE AIRCRAFT GROUP 14
2D MARINE AIRCRAFT WING
POSTAL SERVICE CENTER BOX 8051
CHERRY POINT, NC 28533-0051

5800
Legal

From:    ███████████████████████████████████ 7543 USMC

To:      Commanding Officer, Marine Aircraft Group 14

Subj:    SUMMARY OF INTERVIEW CONDUCTED WITH ████████████████
         CONCERNING THE COMMAND INVESTIGATION INTO THE
         CIRCUMSTANCES SURROUNDING THE EQUAL OPPORTUNITY COMPLAINT
         OF 13 MARCH 2014

## SUMMARY OF INTERVIEWS

1. ███████████████ was formally interviewed on 17 March 2014.
This interview was conducted to ensure all potentially relevant
information was gathered. ████████████ answered all questions
fully during the course of the interviews.

2. ███████████ was assigned to Marine Wing Support Group
(MWSG) 47 from ███████ until ████████ and served in the ████████

3. ████████████████████████████████████ stated that
although he never observed any overt racism, he did feel
alienated from the other officers.  He also stated that it
seemed he was an outsider when he first arrived but that it did
get better with time. ███████████████ stated that this feeling of
isolation was different than what he had experienced at other
commands.

4. ████████████████ stated that he remembers several mass emails
between several officers and Staff Non Commissioned Officers
that make inappropriate and disrespectful remarks about the
president. This situation became so bad that the commander had
to intervene.

███████████████████████████████

63                                          ENCLOSURE (11)



UNITED STATES MARINE CORPS
MARINE AIRCRAFT GROUP 14
2D MARINE AIRCRAFT WING
POSTAL SERVICE CENTER BOX 8051
CHERRY POINT, NC 28533-0051

5800
Legal

From: ███████████████████████████████ 7543 USMC
To:   Commanding Officer, Marine Aircraft Group 14

Subj: SUMMARY OF INTERVIEW CONDUCTED WITH ██████████████
      ████████████ CONCERNING THE COMMAND
      INVESTIGATION INTO THE CIRCUMSTANCES SURROUNDING THE
      EQUAL OPPORTUNITY COMPLAINT OF 13 MARCH 2014

SUMMARY OF INTERVIEWS

1. ████████████████████████ was formally interviewed on 24 March
and 25 March 2014.  This interview was conducted to ensure all
potentially relevant information was gathered. ████████████████
████████ answered all questions fully during the course of the
interviews.

2. ████████████████████ was assigned to Marine Wing Support
Group (MWSG) 47 from ████████ until ████████ and served as ████████████
████████████████████████████ is now retired.

3. ████████████████████ stated that were racial tensions at
Marine Wing Support Squadron (MWSS) 471 Detachment B.

4. ████████████████████ stated that ████████████████ and ████████
████████ were definitely intent on getting Sergeant
Turner out of the Marine Corps. ████████████████████ stated
that there were several occasions where the squadron was being
very aggressive in going after Sergeant Turner and in so doing
violated administrative processes.

5. ████████████████████ stated that once you were on ████████
████████ and ████████████████████████████ bad side you could
not recover.  He advised Sergeant Turner to get orders away from
the command because he would never have a chance to recover if
he stayed.

ENCLOSURE (15)

01/81/14

To Whom It May Concern:

This statement is meant to detail an experience I had back in July of 2008, as ▮▮▮▮▮▮▮▮▮▮▮ while on ADOS with MWSS 471, Detachment B, in Selfridge Air National Guard Base, Mt Clemens.

I was in the right front office downstairs, by the equipment bay, taking a break from inventorying MEPDIS gear. Also present in the office was, then ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ (b)▮▮▮▮(7)c
(b)▮▮▮▮. Although I cannot remember the specific details of the conversation, ▮▮▮▮▮▮▮▮ made the following comments "All Mexicans are good for are crimes and having babies." This comment was especially shocking to me because I remember thinking ▮▮▮▮▮▮ was Mexican. I then asked ▮▮▮▮▮(7)c was Mexican ▮▮▮▮ proceeded to tell me that ▮▮▮ lineage was from a different South American background.

I looked at the ▮▮▮▮ and said ▮▮▮▮ what if I was part Mexican?" His response was, "Maybe your black side might be able to come in, but your Mexican side will definitely stay outside."

This was, indeed, shocking to me. I regret not reporting this, and this conversation stuck with me, through the years because I couldn't believe ▮▮▮▮▮ would talk openly like that. Additionally, I was warned by a SNCO, during this same period, to stay away from Sgt Turner, as the Command "had it in" for him and I would be judged based on my association with him. If there are any questions concerning the preceding statements, please feel free to reach me at ▮▮▮▮▮▮▮▮▮

ENCLOSURE (17)

From: ███████████████                                    March 7, 2014

To: Whom it may concern

Subject: Sergeant Ryan Turner's petition to the Naval Board of Corrections.

I am a ███████████████ hired as the MWSG-47 ███████████████ beginning on April ████████. My job there was to provide deployment support, information resource and referral information to the Military personal directly assigned to Headquarters MWSG-47 and MWSS 471 Detachment Bravo; I provided information from higher authorities, guidance and support as needed to 3 Squadron/Battalion level ████████ and 8 Detachment/Company deputy ████████ in support of the more than 2200 Marines and Sailors assigned to MWSG-47.

Because MWSS-471 was collocated in the general vicinity, I got a change to know the Marines and Sailors of both units very well as I ████████████████████████████████ From time to time they would also stop in my office when they had a family readiness related question or just needed to talk to someone other than their immediate chain.

There were less than a dozen black and other minority Marines and Sailors out of the more the 185 reserve and 28 active duty I&I staff personal. Sgt turner was the only active duty black Marine that I knew who was assigned and working at Detachment bravo while there were 3 to 4 black senior SNCO's working at the Group Headquarters across the street from the detachment.

One of my duties while I was on active duty was that of an ████████████████████ I would process cases of discrimination, dispute resolutions and provide annual and as required Equal Opportunity Training and coordinated ethnic observances for thousands of Marines and Sailors at MCB Quantico.

During the time I was the ████████████████ at MWSG-47, I didn't have any first hand discrimination experiences at work with members of the MWSG-47 or MWSS-471. One thing that was shocking to me was how certain members of the staff overtly expressed their political affiliations through stickers on their vehicle, e-Mail through government computers and ever at the staff meetings.

ENCLOSURE (1P)

They made their obvious dislike for our current President and his policies known to all to point where the Group Commander had to intervene.

I got into a heated debate about the need for an equal opportunity program in the Marine Corps. I was told by a senior officer that "there was no need for a program because we don't have a problem with discrimination". I told him "maybe not where you sit". This quote came from the same person who said "pregnant women don't belong in the corps" in front of her Marines. No one said anything because of his rank.

I have had several Marines come to vent to me about their experiences as a member of their respective units. Some noted a disparity between how the active Marines treated the reserve Marines, how they felt the senior white Marines (officers and enlisted) treated the junior black Marines (active and reserve) as well as how the female Marines (officer and enlisted) felt they were being treated unjustly by certain senior officers. That was great deal to take in for someone ████████████████████████
████████████████████████████████████████

One Marine LCPL dropped to the IRR and during his exit interview I asked him why he was getting out. To my surprise he didn't say he had completed his obligated time, school or job opportunities. He said he and Marines he worked with were being treated like they didn't belong by the leadership at the Detachment and he didn't want to be a part of it anymore. I asked him if he had addressed it with his chain of command which he replied yes but nothing changed. I asked him he minded if I share his feeling with ████████ which I did. The Marine said the damage is done now and he just wanted to get out (b)(7)(c) (b)████ ███ ██████████████████████████████continued to volunteer until MWSG-47 was deactivated in July 2012 and my transfer to ████ 24th Marines.

Another incident that I became aware of involved a black SMCR Marine Captain and the Detachment B (b)████ (7) The Black SMCR Captain told me of how he was being shunned by the white officers from the Det. He said on several occasions he made attempts to show camaraderie with the white officers of the Detachment and one occasion he said he approached the Detachment ████ and greeted him. He said the (b)████ looked him in the eye and without acknowledging him turned and walked away leaving him standing in place. He was very bothered by this but he didn't know what to do about. I referred him to the Group I&I for resolution.

76

ENCLOSURE (1)(P)

The third incident involved me and one of the Detachment B Marines after hours when I attending a small gathering of Marines my neighbor who was a drilling reserve at the time had invited to his home during a drill weekend. By the time I had gotten to his house he and the Marines from his shop had already had quite a few beers to drink. There were 5 white Marines and me present just sitting in his garage we talking about a number of random things. The subject of the Marine Corps Ball came up and I shared with them that ████████ was considering having the top 40 live band that performed at the units Christmas party two years in a row present the music at the next Marine Corps Ball. After I sad that, one of the Marines immediately yelled out "no one wants to hear that jigibu music"! At that moment everyone got real quiet and they turned toward me to see what I was going to do or say. I asked him what he meant and all he would tell me is that where he is from in small town in Ohio, there are no blacks there and that's how they talked. I looked at my neighbor, thanked him for inviting me, threw my almost full bottle of beer in the trash and excused myself and went back home. The next morning at work I told ████████ what had happened and who was involved. ████████ called all of the Marines and Sailors together to address what had happened and that this type of behavior on or off duty would not be tolerated. Not sure if there was any disciplinary action taken but I no longer go over to my neighbor's house anymore.

The two other incidents I became aware of was with ████████ who came to me after he said he had overheard a group of I&I staff Marines making disparaging racial slurs about him and other Marines in the unit. He came into my office with tears in his eyes and told me about what had happened. To me he appeared to be in a state of shock. I suggested to him that he go see ████████ representative about what had happened. He said ████████ was one of the ones involved. Next I referred him to ████████ and Group Commander who immediately called for an all hands to address the incident. The other concerned one of our female officers who was having a hard time with her supervisor who felt women didn't belong in the military and she felt she was treated less than by him. She later submitted a complaint to HQMC MFR who sent an investigator to see what was going on. This was the same supervisor who didn't believe that discrimination existed in the military and one of the ones who openly challenged our current command in chief abilities to lead our nation.

I was asked by Sgt Turner if I could provide a statement and anything I may have seen or heard or experienced that could have been interpreted as needing to be addressed by an equal opportunity representative. I don't know how much if any of my experiences directly relate to his petition or

ENCLOSURE (7P)

whether his commander covertly or overtly endorsed for that matter or didn't know anything about what the Marines of his unit were saying. I have no personal knowledge of Sgt Turners work habits or interactions with his superiors how-ever in talking to him, he strikes me as a very capable Marine. I hope that this letter can be of some help to Sgt Turner in his quest for retention. For any questions or concerns I can be reached at:

3/7/2014

ENCLOSURE (18)

Turner Sgt Ryan P

**From:**
**Sent:** Friday, September 20, 2013 2:49 PM
**To:** Turner Sgt Ryan P
**Cc:**
**Subject:** FW: HOT HOTLINE ASSIST
**Signed By:**

Per request.

2d Marine Aircraft Wing
Command Inspector General
PSC Box 8078
MCAS, Cherry Point, NC 28532
Comm: (252) 466-4676  DSN: 582
BB:     (252) 876-5806
Fax:    (252) 466-3097
Hotline/Fraud Waste & Mismanagement: (252) 466-5038
IG Intranet site:    https://intranet.2dmaw.usmc.mil/IG/default.aspx
**IN GOD WE TRUST**

*********************************************
This e-mail is intended only for the addressee named above and may contain
legally privileged and confidential information protected from disclosure by
the Freedom of Information Act (FOIA), 5 USC Section 552, and/or the Privacy
Act, 5 USC Section 552a.  Reviewing, copying, distributing, or otherwise
disseminating this message or its attachments is strictly prohibited without
the express permission of the sender.  If you have received this
communication in error, please notify the sender immediately by replying to
this e-mail, and delete the original message from your computer.

-----Original Message-----
**From:**
**Sent:**                          2013 1:22 PM
**To:**
**Cc:**
**Subject:** RE: HOTLINE ASSIST

We have no record of ever receiving or endorsing this package.

r/s

-----Original Message-----
**From:**
**Sent:** Friday, September 20, 2013 12:09
**To:**

1

ENCLOSURE (1).

81

Subject: HOTLINE ASSIST

Sirs, thanks for the info. What I need verification on is concerning the CG's review or endorsement to Page 1 of the attachment concerning Sgt Turner's appeal ltr to the CRB. What he is alleging is that the 4th MAW CG never review as the order requires, so he then has grounds to overturn through the Naval board of corrections. Appreciate any copy of such endorsement/review, or a statement indicating he did or did not sign.

Thanks

Sr

(████████████)

████████████

IG Marine Aircraft Wing
Command Inspector General
PSC Box 8076
MCAS, Cherry Point, NC 28532
Comm: (252) 466-4676  DSN: 582
SB:       (252) 876-6306
Fax:      (252) 466-3097
Hotline/Fraud Waste & Mismanagement: (252) 466-5038
IG Intranet site:    https://intranet.2dmaw.usmc.mil/IG/default.aspx
**IN GOD WE TRUST**

*******************************************
This e-mail is intended only for the addressee named above and may contain legally privileged and confidential information protected from disclosure by the Freedom of Information Act (FOIA), 5 USC Section 552, and/or the Privacy Act, 5 USC Section 552a. Reviewing, copying, distributing, or otherwise disseminating this message or its attachments is strictly prohibited without the express permission of the sender. If you have received this communication in error, please notify the sender immediately by replying to this e-mail, and delete the original message from your computer.

2

ENCLOSURE (19)



**DEPARTMENT OF THE NAVY**
BOARD FOR CORRECTION OF NAVAL RECORDS
701 S. COURTHOUSE ROAD, SUITE 1001
ARLINGTON, VA 22204-2490

TAL
Docket No: 4743-14
21 July 2015

MR RYAN P TURNER
5799 SOUTHLAND DRIVE
APARTMENT 4206
MOBILE AL  36693

Dear Mr. Turner:

This is in reference to your application for correction of your
naval record in which you requested, in part, the removal of
derogatory material.  In this regard, on 7 May 2015, the Board
approved your request and forwarded a copy of its proceedings
(final decision) to you for information.  However, the letter
forwarding the Board's decision failed to inform you that you
should not contact the Commandant of the Marine Corps or Defense
Finance and Accounting Service for at least 180 days from the
date of the decisional document cover letter, specifically,
18 May 2015.

Be advised that your requests for review of your reenlistment
code and eligibility for a remedial promotion to staff sergeant
are being reviewed under Docket No. NR20150004152.  In this
regard, your case is now awaiting action by the Discharge Review
Section, however, due to a heavy backlog of cases, it is
difficult to predict when your case will be considered.
Nonetheless, your case will be considered within the statutorily
mandated timeframe, and once a decision has been made, you will
be notified of the outcome.

Sincerely,

T. J. REED
By direction



**DEPARTMENT OF THE NAVY**
BOARD FOR CORRECTION OF NAVAL RECORDS
701 S. COURTHOUSE ROAD, SUITE 1001
ARLINGTON, VA 22204-2490

JSR:ks
Docket No. NR4743-14
18 May 2015

MR RYAN P TURNER
100 DAVIDSON RD
HAVELOCK NC  28533

Dear Mr. Turner:

This is in reference to your application for correction of your naval record submitted pursuant to the provisions of title 10 of the United States Code, section 1552.

The final decision in your case is set forth in the Board's report of proceedings, a copy of which is enclosed. The approved changes to your naval record will be made by the Commandant of the Marine Corps (CMC). After (CMC) makes these changes, the Defense Finance & Accounting Service (DFAS) will review your record and make payment of any money that you may be entitled to. Questions concerning money paid and/or the manner of computation should be directed to DFAS-IN/ 8899 E. 56th St., Dept 3300 Attn: (COR/CLAIMS) Indianapolis IN 46249-3300. Also, you should immediately notify DFAS of any change in your mailing address.

Sincerely,

JONATHAN S. RUSKIN
Head, Performance Section

Enclosure



**DEPARTMENT OF THE NAVY**
BOARD FOR CORRECTION OF NAVAL RECORDS
701 S. COURTHOUSE ROAD, SUITE 1001
ARLINGTON, VA 22204-2490

JSR:ks
Docket No. NR4743-14
18 May 2015

From: Chairman, Board for Correction of Naval Records
To:   Commandant, United States Marine Corps

Subj: EX-SGT RYAN P. TURNER, USMC, XXX-XX-0280;
      REVIEW OF NAVAL RECORD

Ref:  (a) 10 U.S.C. 1552

Encl: (1) Copy of report of proceedings of BCNR less
          enclosures

1. In accordance with reference (a), the Board for Correction of
Naval Records has reviewed allegations of error and injustice in
Subject's naval record.

2. The regulations approved by the Secretary of the Navy require that
the naval record of Subject be changed, where appropriate, in
accordance with the action of the Board.

3. The Board has advised Subject of the final decision in this case.

4. It is requested that this Board be furnished a copy of any
correspondence relating to the enclosure; and that this letter and a
copy of the enclosure be returned to the Board, together with any
documentary material directed to be removed.

NOTE: SUBJECT'S COMMAND IS NOT TO INITIATE ACTION TO CORRECT THE FIELD
SERVICE RECORD ON THE BASIS OF THIS COPY OF THE BOARD'S REPORT.
AUTHORITY TO CORRECT THE RECORD WILL COME TO THE COMMAND DIRECTLY FROM
CMC.

*Jonathan S. Ruskin*

JONATHAN S. RUSKIN
By direction

COPY TO:
DFAS-IN



**DEPARTMENT OF THE NAVY**
BOARD FOR CORRECTION OF NAVAL RECORDS
701 S. COURTHOUSE ROAD, SUITE 1001
ARLINGTON, VA 22204-2490

JSR
Docket No. NR4743-14
7 May 2015

From:   Chairman, Board for Correction of Naval Records
To:     Secretary of the Navy

Subj:   EX-SGT RYAN P. TURNER, USMC, XXX-XX-0280;
        REVIEW OF NAVAL RECORD

Ref:    (a) 10 U.S.C. 1552

Encl:   (1) DD Form 149 dtd 8 Oct 13 w/attachments
            and rept of EEO investigation dtd 4 Apr 14
            w/related documents
        (2) HQMC MMRP-13/PERB memos dtd 2 Apr 14
            and 24 Apr 15
        (3) HQMC PERB undtd notes
        (4) HQMC JPL memo dtd 31 Oct 14
        (5) HQMC MIQ memo dtd 7 Jan 15
        (6) Subject's naval record

1.  Pursuant to the provisions of reference (a), Subject,
hereinafter referred to as Petitioner, filed enclosure (1) with this
Board requesting, in effect, that the applicable naval record be
corrected by removing the fitness reports for 15 August 2009 to
31 March 2010, 1 April to 17 June 2010 and 7 June 2010 to
28 March 2011, copies of which are at Tab A; and the service record
page 11 ("Administrative Remarks (1070)") entries dated 24 March 2010
with undated rebuttal, 25 March 2011, 28 March 2011, 31 March 2011
and 6 April 2011 (two entries), copies of which are at Tab B.  He
also impliedly requested setting aside his reduction from sergeant
(pay grade E-5) to corporal (pay grade E-4), effective 28 March 2011,
as the result of a competency review board (CRB) convened on
24 February 2011; and adjusting his sergeant date of rank and
effective date accordingly, from 1 November 2011 to 1 November 2007.
Enclosure (2) reflects that the Headquarters Marine Corps (HQMC)
Performance Evaluation Review Board (PERB) has directed removing all
three of the contested fitness reports.

2.  The Board, consisting of Mses. Polk and Tollefson and Mr. Spain,
reviewed Petitioner's allegations of error and injustice on

7 May 2015, and pursuant to its regulations, determined that the corrective action indicated below should be taken on the available evidence of record. Documentary material considered by the Board consisted of the enclosures, naval records, and applicable statutes, regulations and policies.

3. The Board, having reviewed all the facts of record pertaining to Petitioner's allegations of error and injustice, finds as follows:

    a. Before applying to this Board, Petitioner exhausted all administrative remedies available under existing law and regulations within the Department of the Navy.

    b. Enclosure (3) reflects the basis for the PERB action.

    c. In correspondence at enclosures (4) and (5), JPL and MIQ, the HQMC offices with cognizance over military personnel law and page 11 entries, respectively, have commented to the effect that the portion of Petitioner's request not already granted by the PERB has merit and warrants favorable action.

CONCLUSION:

Upon review and consideration of all the evidence of record, and especially in light of enclosures (4) and (5), the Board finds the existence of an error and injustice warranting the following corrective action:

RECOMMENDATION:

    a. That Petitioner's naval record be corrected by removing the service record page 11 ("Administrative Remarks (1070)") entries dated 24 March 2010 with undated rebuttal, 25 March 2011, 28 March 2011, 31 March 2011 and 6 April 2011 (two entries). This is to be accomplished by physically removing the page 11's on which the entries appear and the rebuttal, or completely obliterating the entries and rebuttal so they cannot be read, rather than merely lining through them.

    b. That his record be corrected further by removing all remaining documentation of his CRB proceedings of 24 February 2011.

    c. That his record be corrected further to show he was not reduced from sergeant to corporal effective 28 March 2011, but served continuously as a sergeant after that date.

2

d.  That his record be corrected further by entering an administrative filler to account for his missing fitness reports in the grade of sergeant for 28 March through 1 November 2011.

e.  That any material or entries relating to the Board's recommendation be corrected, removed or completely expunged from Petitioner's record and that no such entries or material be added to the record in the future.

4.  Pursuant to Section 6(c) of the revised Procedures of the Board for Correction of Naval Records (32 Code of Federal Regulations, Section 723.6(c)) it is certified that a quorum was present at the Board's review and deliberations, and that the foregoing is a true and complete record of the Board's proceedings in the above entitled matter.

JONATHAN S. RUSKIN
Recorder

5.  Pursuant to the delegation of authority set out in Section 6(e) of the revised Procedures of the Board for Correction of Naval Records (32 Code of Federal Regulations, Section 723.6(e)) and having assured compliance with its provisions, it is hereby announced that the foregoing corrective action taken under the authority of reference (a) has been approved by the Board on behalf of the Secretary of the Navy.

ROBERT J. O'NEILL
Executive Director

3



DEPARTMENT OF THE NAVY
HEADQUARTERS UNITED STATES MARINE CORPS
3280 RUSSELL ROAD
QUANTICO, VIRGINIA 22134-5103

IN REPLY REFER TO:
1610
MMRP-13/PERB

0 2 APR 2014

MEMORANDUM FOR THE EXECUTIVE DIRECTOR, BOARD FOR CORRECTION OF
    NAVAL RECORDS

Subj:   MARINE CORPS PERFORMANCE EVALUATION REVIEW BOARD (PERB)
        ADVISORY OPINION ON BCNR APPLICATION IN THE CASE OF
        SERGEANT RYAN P. TURNER, USMC DOCKET NO. 062-14, 066-14 AND
        067-14

Ref:    (a) Sergeant Turner's DD Form 149 of 8 October 2013
        (b) MCO P1610.7F

1.   Per MCO 1610.11C, the Performance Evaluation Review Board with two
members present, met on 11 March 2014 to consider Sergeant Turner's
petition contained in reference (a).  Removal of fitness reports
20090815 to 20100331 (AN), 20100401 to 20100617 (DC), 20100607 to
20110328 (QC) was requested.  Reference (b) is the performance
evaluation directive governing submission of the report.

2.   Sergeant Turner requests that all three reports be removed because
the Competency Review Board (CRB), which is the subject of the adverse
report 20100607 to 20110328, was improperly held, is not documented in
his Official Military Personnel File (OMPF) and his appeal of this CRB
to the Commanding General, 4th Marine Air Wing, was never answered.

3.   In its proceedings, the Board concluded that the contested reports
are administratively correct, but not procedurally complete as written
and filed.  The following is offered as relevant:

    a.   **Fitness report 20090815 to 20100331 (AN)**:  Per rule 306 of the
Manual for Courts-Martial, the Commander can dispose of offenses under
the UCMJ in a myriad of administration manners "such as counseling,
admonition, reprimand, exhortation, disapproval…" etc.  The commander
chose to deal with the petitioner's violation of Article 92 of the
UCMJ by a formal counseling in the form of a Page 11 6105 counseling
entry.  Thus, the 6105 became derogatory material reportable on the
fitness report, and per paragraph 5001.2a(1) of reference (b).
Sergeant Turner acknowledged receiving the 6105, the validity of the
6105 was upheld by the Reviewing Officer (RO) in his adjudication of
the report, and Sergeant Turner chose to offer no further rebuttal.
Nothing regarding this fitness report is improper and Sergeant Turner
fails to substantiate the report is invalid.

    b.   **Fitness report 20100401 to 20100617 (DC)**:  The report was
rendered adverse because Sergeant Turner was charged with domestic
violence and appeared in civil court at which time he pled "no
contest."  The petitioner provided an order of dismissal from the
State of Michigan Judicial District Judicial Court showing that the
case against him was "dismissed without prejudice".  The Board

Subj:  MARINE CORPS PERFORMANCE EVALUATION REVIEW BOARD (PERB)
       ADVISORY OPINION ON BCNR APPLICATION IN THE CASE OF
       SERGEANT RYAN P. TURNER, USMC DOCKET NO. 062-14, 066-14 AND
       067-14

    c.  **Fitness report 20100607 to 20110328 (GC)**: The petitioner
contends that the CRB was improper and should not have been reported
since the CRB voted to retain him and because the CRB is not filed in
his OMPF. He also contends that his appeal to the CRB's findings was
never answered by the CG, 4th MAW.

    d.  The Board found that the RS duly reported on the fact that the
petitioner was the subject of a CRB and was reduced to the rank of
Corporal. The RO confirmed the validity of the fitness report. The
petitioner did not acknowledge either the RS or RO comments. Sergeant
Turner was again promoted to Sergeant 7 months later with a new DOR of
20001001. An attached letter from M.S. S…, a supposed defense
counsel, supposedly claiming that Sergeant Turner's appeal of his CRB
was never answered, speaks with no authority regarding how the CRB was
held. The attached letter indicates that there are five references
documenting the CRB notifications and his appeal package, but none are
attached. The defense counsel claims that three offenses under the
UCMJ, that were part of the CRB, should have properly been handled at
NJP or Courts-Martial. This is contrary to how commanders can in fact
administratively dispose of offenses per the aforementioned Rule 306
of the Manual for Courts-Martial, which also defines other
administrative measure; e.g., administration separation action. Thus,
the CRB was reported on the fitness report. The entire CRB package
does not get filed in the MRO's Official Military Personnel File
(OMPF). However, extracts from the OMPF of the counselings and
notification of reduction to Corporal were filed. The purpose of the
attached letter from Capt O… dated 31 Jan 2014 is unclear, since he is
addressing an incident that occurred at MWSS-471 in July 2008
involving him that was two to three years before the appealed reports.
He offers no cause and effect relationship between his incident and
how that somehow influenced the three reports being petitioned.

4.  In summary, the Board found that the petitioner failed to meet the
burden of proof necessary to establish an inaccuracy or injustice
warranting the removal of two of the three reports. The Board's
opinion, based on deliberation and majority vote, is that the
contested fitness reports covering 20090815 to 20100331 (AN) and
20100607 to 20110328 (GC) should remain a part of Sergeant Turner's
official military record.

Subj: MARINE CORPS PERFORMANCE EVALUATION REVIEW BOARD (PERB)
ADVISORY OPINION ON BCNR APPLICATION IN THE CASE OF
SERGEANT RYAN P. TURNER, USMC DOCKET NO. 062-14, 066-14 AND
067-14

5. The point of contact regarding this matter is Ms. Jo-Ann Lovell,
(703) 784-5600.

CALVIN F. SWAIN
Deputy Director
Manpower Management Division
Manpower and Reserve Affairs
Department
By direction of the Commandant
of the Marine Corps

3



**DEPARTMENT OF THE NAVY**
HEADQUARTERS UNITED STATES MARINE CORPS
3280 RUSSELL ROAD
QUANTICO, VIRGINIA 22134-5103

IN REPLY REFER TO:
1610
MMRP-13/PERB
2 4 APR 2015

From:  Commandant of the Marine Corps
To:    Sergeant Ryan P. Turner, USMC Docket Nos.
       042-15 and 043-15
       5799 Southland Drive, Apt. 4206, Mobile, AL 36693

Subj:  CORRECTION OF NAVAL RECORD

Ref:   (a) BCNR Memo for Commandant of the Marine Corps
           (MMRP-13) of 13 August 2014
       (b) MM Division Memorandum for the Executive Director,
           BCNR, 1610 MMRP-13/PERB, of 2 April 2014
       (c) Military Personnel Law Branch Memorandum for the
           Executive Director, BCNR, 1070 JPL/gso, of 31 October
           2014
       (d) MI Division Memorandum for the Executive Director,
           BCNR, 1070 MIQ 7 January 2015

1.  Per the references, the Performance Evaluation Review Board
has reviewed allegations of error and injustice in your naval
record.  Having reviewed all the facts of record, the Board has
directed that your naval record will be corrected by removing the
following fitness reports:

| Date of Report | Reporting Senior | Period of Report |
|---|---|---|
| 27 July 2010 | Capt A. B. Rickenbach | 20090815 to 20100331 (AN) |
| 17 May 2011 | Capt A. B. Rickenbach | 20100607 to 20110328 (GC) |

2.  There will be a memorandum inserted in your naval record in
place of the removed report.  The memorandum will contain
appropriate identifying data concerning the report and state that
it has been removed by direction of the Commandant of the Marine
Corps and cannot be made available in any form to selection
boards and reviewing authorities.  It will also state that such
boards may not conjecture or draw any inference as to the nature
of the report or the events that may have precipitated it, unless
such events are otherwise properly a part of the official record.
The PES (the data base which generates your Master Brief Sheet)
will be corrected accordingly.

C. F. SWAIN
By direction

RECEIVED MAY 4 2015

RYAN TURNER

20090815-20100831 (AN)

RECONSIDERATION: IN THE ORIGINAL REQUEST, THE MRO REQUESTED REMOVAL OF 3 FITNESS REPORTS. THE PERB PREVIOUSLY ANSWERED THAT PETITION IN PART BY REMOVING A DC FITNESS REPORT FOR THE PERIOD 20100401 TO 20100617, BUT RECOMMENDED THAT THE OTHER TWO REPORTS REMAIN. THE MRO IS NOW REQUESTING THE REMOVAL OF THIS (THE SECOND) REPORT CONTENDING THAT HE WAS NOT GIVEN DUE PROCESS WHEN HE SUBMITTED AN APPEAL FOR THE CRB AND THE 6105 IS NOT IN THE OMPF. THE BOARD FOUND THAT THE PETITIONER HAS PROVIDED SUBSTANTIAL EVIDENCE THAT THE FITNESS REPORT CONSTITUTES AN INJUSTICE AND IT SHOULD BE REMOVED. APPROVE-3

20100607-20110328 (GC)

RECONSIDERATION: IN THE ORIGINAL REQUEST, THE MRO REQUESTED REMOVAL OF 3 FITNESS REPORTS. THE PERB ANSWERED THAT PETITION IN PART BY REMOVING A DC FITNESS REPORT FOR THE PERIOD 20100401 TO 20100617, BUT RECOMMENDED THAT THE OTHER TWO REPORTS REMAIN. THE MRO IS NOW REQUESTING THE REMOVAL OF THIS (THE THIRD) REPORT CONTENDING THAT HE WAS NOT GIVEN DUE PROCESS WHEN HE SUBMITTED AN APPEAL FOR THE CRB AND THE 6105 IS NOT IN THE OMPF. THE BOARD FOUND THAT THE PETITIONER HAS PROVIDED SUBSTANTIAL EVIDENCE THAT THE FITNESS REPORT CONSTITUTES AN INJUSTICE AND IT SHOULD BE REMOVED. APPROVE-3

*Notes accompanying MMRP-13/PERB memo dtd 24 Apr 15*



**DEPARTMENT OF THE NAVY**
HEADQUARTERS UNITED STATES MARINE CORPS
3000 MARINE CORPS PENTAGON
WASHINGTON, DC 20350-3000

IN REPLY REFER TO:
1070
JPL/gso
31 Oct 14

MEMORANDUM FOR EXECUTIVE DIRECTOR, BOARD FOR CORRECTION OF NAVAL
RECORDS (BCNR)

Subj: APPLICATION FOR CORRECTION IN THE CASE OF SERGEANT RYAN P. TURNER,
U.S. MARINE CORPS, DOCKET NO: NR4743-14

Ref: (a) MCO P1400.32D (ENLPROM)
(b) MCO P1070.12K (IRAM)
(c) MCO P5354.1D (Equal Opportunity Manual)
(d) SECNAVINST 5420.193 (BCNR)

Encl: (1) DD Form 149 of 8 Oct 2013
(2) JAD ltr 1070 JAM1 of 3 Jul 2014

1. **Issue.** This is in response to your request for a second advisory
opinion (AO) regarding the application by Sergeant Ryan P. Turner
(hereinafter "Petitioner") for the correction of his naval record
contained in enclosure (1) in light of the completed Equal Opportunity
(EO) investigation. The Petitioner requests that the BCNR (1) overturn
the findings and action taken at his Competency Review Board (CRB) and
reinstate his original date of rank (DOR); (2) remove from his Official
Military Personnel File (OMPF) the adverse fitness reports (FITREPs)
covering the reporting periods of 15 Aug 2009 to 31 March 2010, 1 April
2010 to 17 June 2010, and 7 June 2010 to 28 March 2011; and (3) remove
from his OMPF six NAVMC 118(11) (Page 11) entries dated 24 March 2010, 25
March 2011, 28 March 2011, 31 March 2011, and 6 April 2011 (x2).

2. **Opinion.** In light of the EO investigation results, Petitioner's
request should be granted in full.

3. **Background**

    a. The facts of this case are discussed in the first AO contained in
enclosure (2). Petitioner, an African-American male, filed an EO
complaint as a result of his treatment while attached to Marine Wing
Support Squadron 471 (MWSS-471). Petitioner claims that racial bias was
present within his unit and that as a result Petitioner was treated
unfairly by his command. Petitioner received three adverse FITREPs while
at MWSS-471, six adverse Page 11 counselings, and a reduction in rank as a
result of a CRB. The CRB findings have not been properly entered into
Petitioner's OMPF.

    b. The original AO made its recommendations primarily on procedural
grounds, concluding that the Page 11 entries dated 25 March 2011 and 28
March 2011 and the FITREP covering the reporting period of 7 June 2010 to

Subj:  APPLICATION FOR CORRECTION IN THE CASE OF SERGEANT RYAN P. TURNER,
       U.S. MARINE CORPS, DOCKET NO: NR4743-14

28 March 2011 should be removed from Petitioner's OMPF as they reference
an undocumented CRB. The AO determined that the report of the CRB,
endorsements, and report of final action were required to be entered into
Petitioner's OMPF per reference (c), and that Petitioner's commander
failed to ensure this was done; accordingly, it recommended that
Petitioner's original DOR for Sergeant of 1 November 2007 be reinstated.
Further, the AO determined that the FITREP covering the reporting period
of 1 April 2010 to 27 June 2010 should be removed as it references a
conviction in civilian court that was later dismissed by a civilian judge.
The AO recommended that the four remaining Page 11 entries and the FITREP
covering the reporting period of 15 July 2009 to 31 March 2010 remain in
Petitioner's OMPF.

     c.  On 13 March 2014, Marine Aircraft Group 14 (MAG-14) initiated a
command investigation (CI) into Petitioner's EO complaint. The CI,
concluded on 4 April 2014, found substantial evidence of racial bias and
"command climate issues." The CI substantiated multiple violations of
reference (c), and although four years had passed, enough evidence existed
to lend credibility to the claim of racial bias, casting doubt upon the
legitimacy of the command's actions during the period in question. Both
the EO advisor and CO of MAG-14 concurred with this assessment.
Furthermore, the CO of MAG-14 substantiated Petitioner's EO complaint per
reference (c) and recommended that specific action be taken, including
removing from Petitioner's OMPF all FITREPs received while at MWSS-471,
reinstatement of Petitioner's original date of rank, and the convening of
a remedial promotion board.

4.  Analysis

     a.  Per reference (d), in order to justify correction of a naval
record, a petitioner must show to the satisfaction of the BCNR that the
alleged entry or omission in the record was in error or unjust. The BCNR
relies on a presumption of regularity to support the official actions of
public officers. A petitioner has the burden of overcoming this
presumption by producing substantial evidence demonstrating the existence
of a probable material error or injustice. "Injustice" in this context
means "treatment by the military authorities that shocks the sense of
justice, but is not technically illegal." Peoples v. United States, 87
Fed. Cl. 553, 576 (Fed. Cl. 2009).

     b.  Per reference (c), the policy of the Marine Corps is to provide
equality of treatment and the opportunity for all Marines to achieve their
full potential based solely upon individual merit, fitness, and ability.
Commanders are responsible for establishing effective EO objectives within
their command and ensuring the publication, implementation, and
enforcement of the Marine Corps policy on EO and discrimination.

     c.  The results of the EO investigation weigh in favor of granting
Petitioner complete relief. The substantiated EO complaint casts
significant doubt as to whether the actions of Petitioner's command were
conducted free of racial bias and discriminatory intent. The CO of MAG-
14, in substantiating the EO complaint, determined that Petitioner's
command failed to ensure Petitioner's equal treatment pursuant to
reference (c). It thus becomes extremely difficult to separate all of

2

Subj: APPLICATION FOR CORRECTION IN THE CASE OF SERGEANT RYAN P. TURNER,
U.S. MARINE CORPS, DOCKET NO: NR4743-14

Petitioner's adverse FITREPS and Page 11 entries from the racial bias and
discrimination that was determined to have existed across the command when
the documents were entered in his OMPF.

d.  As concluded in the first AO, the Page 11 entries dated 25, 28
March 2011 and the two FITREPs should be removed on procedural grounds
pursuant to references (a) and (b).  However, all of the material
requested for removal was entered into Petitioner's OMPF while Petitioner
was attached to MWSS-471 and its validity is undercut by the
substantiation of pervasive racial bias and discrimination at the command
during the time in question.[1]

e.  The presumption of regularity with regard to the adverse material
added to Petitioner's record has been sufficiently rebutted in light of
the substantiated EO complaint.  Although some of the adverse material
currently in Petitioner's OMPF may fail to constitute probable material
error pursuant to reference (d), the BCNR should find that the interest of
justice nonetheless weighs in favor of granting Petitioner's application
to remove the requested adverse FITREPs and Page 11 entries received while
attached to MWSS-471.

5.  Conclusion.  Petitioner has provided substantial evidence that the
inclusion of six Page 11 entries and three FITREPs in his OMPF constitutes
an injustice.  His request to have them removed from his OMPF should
therefore be granted.  Further, the findings of the CRB should be reversed
and Petitioner's original DOR for Sergeant of 1 November 2007 should be
reinstated.

K. A. LARETTO
Major, U. S. Marine Corps
Deputy Branch Head
Military Personnel Law Branch
Judge Advocate Division

_____

[1] Although not directly related to this AO's analysis, the two Page 11s of 6 April
2011 stand out as somewhat suspicious.  These Page 11s counseled Petitioner for
arriving late to his appointed place of duty.  However, five and nine months had
passed, respectively, from the alleged events in question, and the entries are devoid
of any further details relating to the incident or explaining the reason for the
delay.



DEPARTMENT OF THE NAVY
HEADQUARTERS UNITED STATES MARINE CORPS
3280 RUSSELL ROAD
QUANTICO, VA 22134-5103

1070
MIQ
7 Jan 15

MEMORANDUM FOR EXECUTIVE DIRECTOR, BOARD FOR CORRECTION OF NAVAL
RECORDS

Subj: BCNR APPLICATION IN THE CASE OF SERGEANT RYAN P. TURNER,
EDIPI: 1276001082

Ref: (a) Memo 1070 JPL/gao of 31 Oct 2014
(b) MCO P1070.12K

1. Sergeant Turner's application (DD Form 149) and all enclosures have been
reviewed concerning the removal of four page 11 entries dated 24 March 2010,
31 March 2011, and 6 April 2011 (k2) from his Electronic Service Record
(ESR). Reference (a) is a legal advisory opinion. Reference (b) provides
commanders guidance on page 11 counseling.

2. <u>Analysis</u>. Sergeant Turner bears the burden to demonstrate to the
satisfaction of the Board that the page 11 entries are unjust or in error; he
has met the burden to remove the documents requested.

3. <u>Conclusion</u>. After reviewing Sergeant Turner's request, this office
concurs with the legal advisory opinion (reference (a)). Sergeant Turner has
provided substantial evidence supporting his claim and proving that the page
11 entries were unjust.

4. <u>Recommendation</u>. It is recommended that the Board for Correction of Naval
Records approve Sergeant Turner's request. The page 11's were unjust and
should be removed. Point of contact is Mr. Maurice Gordon at (703) 784-9051.

K. J. RAFFERTY
Manpower Information Quality
Assurance, Manpower Information
Systems Division